IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| NILA WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | Case No. 11-1086-JAR |
| | ) | |
| ADRONICS/ELROB | ) | |
| MANUFACTURING CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Plaintiff Nila Walker filed this action claiming that Defendant Adronics/Elrob

Manufacturing Corporation violated the Family Medical Leave Act ("FMLA") by not reinstating

her after her duly authorized period of FMLA leave.  Because there is no material issue of fact

concerning Plaintiff's physical inability to perform the actual duties of her position at the end of

her FMLA leave and because Defendant had no obligation under the FMLA to restore Plaintiff

to a part-time position with exertional restrictions, the Court grants Defendant's Motion for

Summary Judgment (Doc. 33).

## I.      Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no

genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[1]

In applying this standard, the court views the evidence and all reasonable inferences therefrom in

the light most favorable to the nonmoving party.[2]  "There is no genuine issue of material fact

---

[1]Fed. R. Civ. P. 56(a).

[2]*City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[3]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[4]  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[5]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[6]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[7]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[8]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[9]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a

---

[3]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[4]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[5]*Adler*, 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[6]*Spaulding v. United Trasp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[7]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler,* 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[8]*Anderson,* 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587).

[9]*Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

rational trier of fact could find for the nonmovant."[10]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[11]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[12]  When examining the underlying facts of the case, the Court is cognizant that it may not make credibility determinations or weigh the evidence.[13]

## II.    Uncontroverted Facts

The following facts are either uncontroverted, stipulated to, or viewed in the light most favorable to plaintiff.

Plaintiff worked for Defendant as a Quality Control Inspector from 1997 to 2010.  It was a full time position.  The job description for Quality Control Inspector, which Defendant prepared in approximately 2006, did not expressly include the duties of lifting, twisting, turning or pulling, but from about 2001 on, the job actually involved a lot of lifting, as well as twisting, turning and pulling.  Among the duties expressly included in the job description were, to "inspect all incoming materials equipment used to control production processes and accept material."  On a daily basis, Plaintiff lifted boxes, and for the heavier boxes, Plaintiff used a non-

---

[10]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[11]*Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[12]*Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

[13]*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

powered pallet jack to manually pull pallets of the boxes around the warehouse.

Plaintiff was still working in the Quality Control Inspector position when she went on approved FMLA leave in April 2010, for back surgery.  Her FMLA leave period commenced on April 15, 2010.  Defendant allowed her to take twelve weeks of FMLA leave, or until her doctor released her to work.  Other employees of Defendant had taken FMLA leave in the past and returned to work.

The twelve week FMLA period was to expire on July 8, 2010.  But, at Plaintiff's request, Defendant granted Plaintiff an extension, which Plaintiff took as vacation leave.  This extension was granted on the basis of Plaintiff's doctor's May 28, 2010 work-status form, which stated that plaintiff "cannot work;" followed by another work-status form, dated July 13, 2010, which again represented that Plaintiff "cannot work."

When Plaintiff tendered the July 13 work-status form to her employer on July 14, 2010, she met with Plant Manager Troy Robinson, Production Manager Shirley Grecian and Human Resources Director Sharon Giebler.  Troy Robinson was the supervisor of Plaintiff's immediate supervisor.  In this conversation on July 14,[14] Plaintiff advised that her doctor was releasing her to two weeks of physical therapy and that she would be ready to return to work after that. Plaintiff intended to return to work full time after the two weeks of physical therapy, but she knew that she would not be able to fully perform the lifting, twisting, turning and pulling movements that the job routinely entailed.  During the July 14 conversation, Plaintiff did not share with Troy Robinson and the others that she anticipated that she would return to work with such exertional restrictions.   Troy Robinson told Plaintiff that he would extend her leave until

---

[14]It is unclear whether this conversation occurred on July 14, as Plaintiff testified, or on July 16, as Defendant's records show.  This is an immaterial discrepancy.

4

she presented them with a new doctor's note upon her release.

On July 28, 2010, Plaintiff tendered her doctor's work-status form dated July 22, that indicated that Plaintiff could return to work on July 29, 2010, for part-time work consisting of light duty involving no lifting over 20 pounds, no pulling/pushing, no repetitive movements and no twisting/turning.  Plaintiff met with Human Resources Director Shirley Grecian on July 28. Grecian told Plaintiff to report for work on July 29 at 7 a.m.  They discussed the possibility of Plaintiff returning to work part-time.  After her conversation with Plaintiff on July 28, Grecian discussed the situation with Karen Robinson, who was Executive Vice President, and Troy Robinson's supervisor.  Grecian advised Karen Robinson of the exertional restrictions imposed by Plaintiff's doctor.

During July and August, in anticipation of Defendant's assets being purchased by another company, Karen Robinson had been undertaking a reorganization of Defendant.  She had eliminated one position and assigned to three people the work of the fourth person, who was terminated.  Although there were openings for production work at the Hays facility, Plaintiff could not physically perform production work, given her restrictions.  One organization chart, apparently drafted on or before July 6, 2010 had shown Plaintiff in the position of "In-Process/Certification Tech. Document Control;" but another organization chart, produced at Karen Robinson's deposition showed Plaintiff in the position of "Incoming Inspection."  Before July 14, 2010, no one was specifically tasked with processing shop tickets and instruction books; several employees did that work when time permitted.  Creating a part-time position for this work would have removed duties from those who were doing this work as part of their other responsibilities.

Based on the ongoing reorganization and her understanding of Plaintiff's work restrictions, Karen Robinson decided that there was no available position that would meet Plaintiff's restrictions.  After meeting with Karen Robinson, Shirley Grecian called Plaintiff, and advised her to not report for work on July 29th.  Grecian further advised Plaintiff that she could not commence work until Plaintiff met with Karen Robinson, on the following Monday, August 2.  Plaintiff met with Karen Robinson on August 2, and Karen Robinson terminated Plaintiff.  Karen Robinson wrote a note to the file on August 2, 2010, summarizing her conversation with Plaintiff, which stated "Nila came in and met with me, Troy, & Shirley & Sharon.  We confirmed that based on the changes in the organization (revised chart & Susan Holmeister being 40 hrs) there is no position available that fits the description on the doctor's note.  We're only hiring assembly workers, purchasing and shipping experience."

After August 2, Plaintiff's doctor continued to impose work restrictions on her.  On August 19, she was released only for part-time work with light duty and the same restrictions as given in July.  On September 3, 2010, the doctor released plaintiff for full time work, but even then, with direction for plaintiff to "self limit lifting and straining."  Plaintiff sought employment until her unemployment benefits expired.  After that, she stopped looking for employment, believing that working would cause her further physical injury.

## III.   Discussion

Plaintiff claims that Defendant violated the FMLA and interfered with her rights under the FMLA by terminating her rather than reinstating her.  This entitlement or interference theory of recovery under the FMLA arises from § 2615(a)(1),[15] which provides that "[i]t shall be

_____

[15] 29 U.S.C. § 2615(a)(1).

unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter." Interference with FMLA rights is a statutory violation regardless of the employer's intent.[16]  As the Tenth Circuit explained in *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*,[17] the interference theory is "derived from the FMLA's creation of substantive rights" and an employer violates the FMLA when it interferes with the FMLA-created right to medical leave or reinstatement following leave.[18]

### *FMLA Interference Claim*

To make out a prima facie claim for FMLA interference, plaintiff must demonstrate that: (1) she was entitled to FMLA leave; (2) some adverse action by the employer interfered with her right to take leave or be reinstated after leave; and (3) the employer's action was related to plaintiff's exercise or attempted exercise of her FMLA rights.[19]  The FMLA entitles a qualified employee to up to twelve weeks of leave during any twelve month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."[20]  It is undisputed that Plaintiff was entitled to FMLA leave.  It is also undisputed that Defendant granted Plaintiff twelve weeks of FMLA leave and allowed Plaintiff to take an additional two weeks of vacation leave, from July 14 to July 28, granting Plaintiff the two week extension she needed for physical therapy.

Plaintiff claims that Defendant's termination of her employment interfered with her right

---

[16]*Metzler v. Fed. Home Loan Bank*, 464 F.3d 1164, 1180 (10th Cir. 2006) (citations omitted).

[17]298 F.3d 955, 960 (10th Cir. 2002).

[18]*Id.*

[19] *Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1319 (10th Cir. 2005).

[20]29 U.S.C. § 2612(a)(1)(D).

to be reinstated after FMLA leave.  Defendant argues that Plaintiff had no right to be reinstated because on July 8, at the end of the twelve weeks, and even by July 28, as extended, Plaintiff was unable to perform the functions of her position.  The regulations place certain limitations on an employee's right to reinstatement, including,

> § 825.216 Limitations on an employee's right to reinstatement.
>
> (c) If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition or an injury or illness also covered by workers' compensation, the employee has no right to restoration to another position under the FMLA . . . .[21]

Thus, an employee who is unable to perform the job after the expiration of FMLA leave has no right to reinstatement.[22]  Plaintiff does not dispute that as of July 28, and even August 2, the date of her termination, she was unable to work full time and was unable to perform the lifting, twisting, turning and pulling she had been routinely performing in her job as a Quality Control Inspector.  For this reason, she had no right to reinstatement, and Defendant did not interfere with any right to reinstatement under the FMLA.

Plaintiff nonetheless argues that certain issues of fact preclude the grant of summary judgment.  Plaintiff's arguments are unavailing.  First, Plaintiff points to evidence of two organizational charts, one showing her in the position of  In-Process/Certification Tech. Document Control, the other showing her in the position of Incoming Inspection.  The

---

[21] 29 C.F.R. § 825.216(c); *see also* 29 U.S.C. § 2614(a)(1)(B).

[22] *See, e.g.*, *Mondaine v. Am. Drug Stores, Inc.*, 408 F. Supp. 2d 1169, 1206 (D. Kan. 2006); *Sarno v. Douglas Elliman-Gibborns & Ives, Inc.*, 183 F.3d 155, 161–62 (2d Cir. 1999) (interference claim fails when plaintiff was unable to perform his job for two months after expiration of twelve week FMLA leave); *McGregor v. Autozone, Inc.*, 180 F.3d 1305, 1308 (11th Cir. 1999) (employee had no right of reinstatement when absent longer than protected period, even if employer provides more leave than FMLA provides).

uncontroverted evidence is that these were draft organizational charts prepared by Karen

Robinson during the restructuring of the company.  Plaintiff argues that there is an issue of fact

as to whether Defendant intended to reinstate her to either of these positions.  Yet, Plaintiff

points to no evidence suggesting that either of these positions was equivalent to the Quality

Control Inspector position she had at the time she took FMLA leave.[23]  Nor does Plaintiff point

to any evidence suggesting that she was able to perform the functions of these other jobs, given

that her doctor restricted her to part-time, light duty work.  Plaintiff contends that she could

perform the functions of Incoming Inspection, if others would do the lifting, but fails to point to

evidence that the Incoming Inspection job only required part-time, light duty work.  In any case,

the FMLA only gives the employee the right to be reinstated to the same or an equivalent

position; and the employee has no right to reinstatement to another position if at the end of the

FMLA leave, she is still unable to perform the essential functions of the position.[24]  Thus,

whether or not Defendant was contemplating placing Plaintiff in either of the two positions

shown on the organizational charts is immaterial.  For the same reasons, to the extent there is an

issue of fact, it is immaterial whether Troy Robinson, Shirley Grecian or Sharon Giebler

promised or had authority to promise Plaintiff a part-time position when they met with her on

July 14.

    Plaintiff also argues that there is an issue of fact as to whether Adonics violated its policy

of accommodating an employee returning from FMLA leave if they needed a different position.

---

[23]*See* 29 C.F.R. § 825.215(a), which defines an equivalent position as "one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status.  It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority."

[24] 29 C.F.R. § 825.216(c).

But this Court declines to find that an employer's policy confers a right under the FMLA to reinstate an employee to another position that accommodates medical restrictions that render the employee otherwise unable to return to her same or equivalent position.  To be sure, the majority of courts have held that an employer's policy of granting a longer period of FMLA, or an extension of the twelve-week period, does not confer on the employee a right to reinstatement beyond the FMLA protected period.[25]  And Plaintiff cites to no authority for the proposition that an employer's policy of accommodating an employee with medical restrictions precluding return to the same work confers such a right under the FMLA.  Indeed, an employer's policies are material, if at all, in the context of a retaliation claim under the FMLA, because the employee's policies may be material to the question of pretext.[26]  But here, Plaintiff's claim is for interference, not retaliation, under the FMLA.

Finally, without pointing to any support in the record, Plaintiff suggests that Defendant violated the notice provisions of FMLA by failing to give her notice of what information needed to be included in her Certificate for Fitness of Duty.[27]  Plaintiff fails to raise a genuine issue, by failing to point to support in the record for this proposition.  Moreover, this is not a material issue, for Defendant did not terminate Plaintiff because of some inadequacy in the certificate.  Defendant terminated Plaintiff because Plaintiff was medically unable to return to her same or equivalent position at the end of her FMLA leave, even as extended.

---

[25] S*ee McGregor*, 180 F.3d at 1308 (employer's policy of granting longer period of FMLA leave did not give employee a right of reinstatement beyond the FMLA protected period); *Degraw v. Exide Technologies*, 744 F. Supp. 2d 1199, 1216 (D. Kan. 2010) (collecting cases); *cf. Santosuosso v. Novacare Rehab.*, 462 F.S.2d 590, 597–98 (D.N.J. 2006).

[26] *Metzler v. Fed. Home Loan Bank*, 464 F.3d 1164, 1170 (10th Cir. 2006) ("Retaliation claims under the FMLA are subject to the burden-shifting analysis of *McDonnell Douglas*." (internal citations omitted)).

[27] *See* 29 CFR § 825.312(d).

10

*Mitigation of Damages*

Defendant also moves for summary judgment on its affirmative defense that plaintiff has failed to mitigate damages.  In light of the Court's grant of summary judgment, the Court declines to rule on this issue.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion for Summary Judgment (Doc. 33) is **granted**.

**IT IS SO ORDERED**.

Dated: December 22, 2011

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

11